UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| RICHARD E. TOLLEY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 09-2019 |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

# ORDER

In February 2008, Administrative Law Judge (hereinafter "ALJ") David Thompson denied Plaintiff Richard Tolley's application for social security benefits. ALJ Thompson based his decision on findings that Plaintiff was not disabled within the meaning of the Social Security Act and that he was capable of performing a significant number of jobs available in the national economy.

In February 2009, Plaintiff filed a Complaint for Judicial Review (#5) against Defendant Michael Astrue, Commissioner of Social Security, seeking review of the ALJ's decision to deny social security benefits. In June 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#14). In August 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#17). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand **(#14)**.

## I. Background
### A. Procedural Background

Plaintiff applied for social security benefits in August 2004, alleging disability beginning April 1, 2004. The Social Security Administration denied his application initially and upon reconsideration. Plaintiff appealed in October 2005, and the ALJ held a hearing in January 2008. Plaintiff, his former sister-in-law, Jessica Finical, and vocational expert (hereinafter "VE") Bob Hammond, testified at this hearing. Plaintiff was represented by counsel at the hearing. In February 2008, the ALJ denied Plaintiff's application for social security benefits based on

findings that Plaintiff was not disabled within the meaning of the Social Security Act and that he was capable of performing a significant number of jobs that exist in the national economy. In October 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. In February 2009, Plaintiff appealed this decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g). Plaintiff seeks a reversal of the ALJ's decision. In the alternative, Plaintiff asks the Court to remand the case for reconsideration.

The parties have consented to the jurisdiction of a United States Magistrate Judge.

### B. Factual Background

The ALJ found that Plaintiff had a severe combination of impairments including diabetes mellitus, degenerative disc disease, and depression. The ALJ found that Plaintiff's impairments did not satisfy the Listings for the following reasons: (1) Plaintiff does not have the required neuropathy, episodes of acidosis, or vision impairment to satisfy Listing 9.08 for diabetes mellitus; (2) Plaintiff's back condition does not include the required nerve root compression, spinal arachnoiditis, or spinal stenosis to satisfy Listing 1.04; and (3) Plaintiff's mental impairment led to a mild restriction in activities of daily living, moderate difficulties in social functioning, mild difficulties in regard to concentration, persistence or pace, and no episodes of decompensation, but did not satisfy the requirements for Listing 12.04.

Based on his impairments, the ALJ found that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform light work, except that he must avoid concentrated exposure to hazards and is limited to occasional contact with the public, co-workers, and supervisors.

The ALJ and the parties provided detailed descriptions of the medical evidence, and the Court will not repeat it here.

## II. Legal Standard

This Court does not try the case *de novo* when reviewing an ALJ's decision or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

The Court also gives deference to the ALJ's credibility findings. This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). Therefore, courts uphold an ALJ's credibility finding as long as the record affords some support for the finding. *See Urban v. Sullivan*, 799 F. Supp. 908, 912 (C.D. Ill. 1992) (stating that courts give considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show that those findings are patently wrong).

## III. Discussion

Plaintiff argues that the ALJ's February 2008 decision contains the following errors: (1) the ALJ's RFC determination was incomplete and erroneous; (2) the ALJ improperly addressed Plaintiff's credibility; and (3) at Step Five, the ALJ used incomplete hypothetical questions and failed to comply with SSR 00-4p.

### A. Residual Functional Capacity

Plaintiff first argues that the ALJ's RFC determination of light work is erroneous and incomplete because the ALJ did not give enough weight to Plaintiff's neuropathy or his other conditions, including syringomyelia, torn rotator cuff, medication side effects, and mental impairments.

### 1. Neuropathy

Plaintiff raises several arguments concerning his neuropathy. First, he contends that the ALJ erred at Step Two of the five-step evaluation process when he did not consider Plaintiff's neuropathy to be a severe impairment. Second, he argues that the ALJ erred at Step Three by not finding that Plaintiff's neuropathy rose to the level required to satisfy Listing 9.08. Third, he argues that the ALJ either ignored or inadequately addressed his neuropathy in the RFC analysis.

First, Plaintiff contends that the ALJ erred at Step Two because he did not consider Plaintiff's neuropathy to be a severe impairment. The Seventh Circuit has held that "step two is a threshold analysis that requires [claimant] to show only that he has *one* severe impairment." *Bradley v. Barnhart*, 175 F. App'x 87, 90 (7th Cir. 2006). Therefore, when an ALJ fails to label an impairment as severe but has proceeded beyond Step Two of the five-step analysis, he has not committed a reversible error. *See Curtis v. Astrue*, 623 F. Supp. 2d 957, 968 (S.D. Ind. 2009). Here, the ALJ found that Plaintiff had a severe combination of impairments including diabetes mellitus, degenerative disc disease, and depression. (R. 20.) Accordingly, the ALJ's failure to specifically label Plaintiff's neuropathy as a severe impairment does not constitute reversible error.

Next, Plaintiff contends that the ALJ erred at Step Three by finding that Plaintiff's neuropathy does not satisfy Listing 9.08. To satisfy Listing 9.08, a claimant's neuropathy must give rise to "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Part 404, Subpt. P. App'x 1, § 9.08. When considering Plaintiff's neuropathy, the ALJ relied on the opinions of treating physicians. He referred to clinic notes from Dr. Robert

Cranston and Dr. Robert Kirby, including statements that claimant had full motor strength in all extremities (R. 22); that claimant demonstrated no objective findings of abnormal gait, severe neurological deficits, or residuals other than complaints of neuropathy which responded to proper medication dosages (R. 22-23); and that the treating physicians noted no objective findings of severe motor, sensory or reflex loss (R. 23).  These clinic notes support the ALJ's conclusion that Plaintiff's neuropathy did not rise to the level required by the Listing.  As a result, the Court cannot conclude that the ALJ erred by finding that Plaintiff's diabetes did not satisfy Listing 9.08.

Last, Plaintiff contends that the ALJ either ignored or inadequately addressed Plaintiff's neuropathy in determining the RFC.  The ALJ must consider all of the claimant's impairments when determining the RFC.  20 C.F.R. § 404.1520(e).  As noted above, the ALJ relied on clinic notes from Dr. Cranston and Dr. Kirby.  Both of these doctors addressed Plaintiff's neuropathy and related symptoms.  Thus, the ALJ did not ignore the neuropathy.  Furthermore, it is the ALJ's duty to weigh the evidence.  *Richardson*, 402 U.S. at 400.  After reviewing the ALJ's decision in light of the evidence in the record, the Court cannot conclude that the ALJ erred by his treatment of the neuropathy.

Based on the above reasoning, the Court concludes that the ALJ adequately accounted for Plaintiff's neuropathy in Steps Two and Three of the five-part analysis, and he adequately addressed it in the RFC.

### 2.  Other Conditions

Plaintiff also argues that the ALJ failed to consider several other alleged conditions in determining the RFC, including syringomyelia, a torn rotator cuff, medication side effects, and mental impairments.

First, Plaintiff contends that the ALJ failed to consider his syringomyelia. However, the ALJ acknowledged Plaintiff's symptoms, despite the fact that he did not address this condition by name. (R. 22-23.) Furthermore, the record is unclear as to whether Plaintiff actually had this condition. Initially, it appears that Dr. Joyce Brunt diagnosed Plaintiff with syringomyelia in 2005. (R. 271.) However, this same doctor noted in 2006 that "I hesitate to describe this is a definite case of syringomyelia." (R. 209-10.) Similarly, Dr. Cranston opined that an MRI was "suggestive of syringomyelia" but he did not make a definite diagnosis. (R. 223-25.) Thus, it seems that, based on the record, reasonable minds could disagree over whether Plaintiff, in fact, has syringomyelia. Therefore, the Court concludes that the ALJ adequately addressed it in the RFC.

Next, Plaintiff contends that the ALJ did not account for his torn rotator cuff as part of the RFC. In the decision, the ALJ noted that Plaintiff was insured through December 31, 2006. (R. 18.) Therefore, Plaintiff had to establish disability on or before that date to be entitled to a period of disability and disability insurance benefits. (R. 18.) Plaintiff's rotator cuff injury was diagnosed on September 14, 2007, and the record includes no evidence that the injury occurred prior to the date last insured. (R. 358.) In addition, Plaintiff has presented no evidence to show that this injury would last longer than twelve months. Therefore, the Court concludes that the ALJ did not err by his failure to take into account Plaintiff's torn rotator cuff in the RFC.

Next, Plaintiff contends that the ALJ did not account for his medication side effects in the RFC. However, the record does not support a finding that Plaintiff had side effects that limited his ability to work. Plaintiff offers numerous references to the record to support his claim but only one refers to side effects that Plaintiff had, and that clinic note stated that the prescription producing those side effects was changed. (R. 385.) The record contains no other evidence of side effects since then. Thus, the ALJ did not err by his treatment of side effects.

Last, Plaintiff contends that the ALJ did not sufficiently account for Plaintiff's mental impairments in the RFC. The RFC determination included limits related to the ALJ's finding of moderate restrictions for social functioning. (R. 21.) Other than that limitation, the ALJ found

6

that the record failed to support Plaintiff's claim of disabling mental illness. (R. 24.) The record contains evidence that supports the ALJ's conclusion, especially Plaintiff's visits with Dr. Hayng-Sung Yang in 2005 (R. 184-86), and with Ann Russell in 2005-06 (R. 380-82), at which time Plaintiff was not diagnosed with any mental impairments. The record also contains evidence that Plaintiff may have suffered panic attacks, however, these improved with medication. (R. 274.) Based on this evidence, the Court concludes that substantial evidence supports the ALJ's finding regarding Plaintiff's mental condition.

### B. Credibility Finding

Plaintiff also argues that the ALJ improperly assessed Plaintiff's credibility.

Courts will generally not disturb an ALJ's credibility determination as long as it has some support in the record. *Edwards v. Sullivan*, 985 F.2d 335, 337 (7th Cir. 1993). The Seventh Circuit has stated that, when reviewing a credibility determination, a court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)). "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong." *Id.* at 413-14. The ALJ's decision "must contain specific reasons for the finding on credibility" and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In this case, the ALJ relied on both subjective and objective reasons when assessing Plaintiff's credibility. Subjectively, the ALJ noticed that Plaintiff "showed no signs of distress in the hearing room" even though Plaintiff testified his pain was at level 8 on a 10-point scale. (R. 23.) The ALJ also noted that Plaintiff "never had his feet elevated at any time during the hearing, and still showed no signs of distress" even though Plaintiff testified that his doctor told him to "have his feet elevated while he sits, to waist level." (R. 23.) The ALJ also supported his credibility determination with reference to objective evidence. In particular, he referred to clinic notes from Plaintiff's treating physicians, hearing testimony from the VE and Plaintiff, and other

evidence in the record. (R.23.) The record supports the ALJ's findings. (R. 98-101, 184-86, 448-49.) The Court has some concerns about the ALJ taking judicial notice of past witnesses' accounts of caring for diabetes and whether the ALJ should have considered the VE's personal experience. Nonetheless, the ALJ adequately explained his reasoning and, in light of the deferential standard for the ALJ's assessment of credibility, the Court cannot conclude that this credibility determination was "patently wrong."

### C. Step Five Findings

Plaintiff also argues that the ALJ's Step Five findings were erroneous because (1) the ALJ's hypothetical questions to the VE were incomplete; and (2) the ALJ violated SSR 00-4p because he failed to ask the VE if his testimony was consistent with the DOT.

### 1. Hypothetical Questions

Plaintiff first contends that the ALJ failed to give the VE complete hypothetical questions because the questions did not include Plaintiff's alleged syringomyelia, rotator cuff injury, medication side effects, and panic attacks. The ALJ incorporated the entire RFC in the hypothetical questions, and this Court has already determined that the RFC was appropriate. Thus, the ALJ gave the VE complete and proper hypothetical questions.

### 2. SSR 00-4p

Plaintiff next contends that the ALJ violated SSR 00-4p because he failed to ask the VE if his testimony was consistent with the DOT. Plaintiff also contends that the VE's testimony conflicted with the DOT.

An ALJ is obligated to ask a VE whether his testimony conflicts with the DOT, and if it does, to obtain a reasonable explanation for the conflict. SSR 00-4p. However, even if an ALJ fails to inquire, it is not necessary to remand unless there is an *apparent* conflict between the testimony and the DOT. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). When a conflict is "identified"–that is, if the claimant, his attorney, or the ALJ on behalf of the claimant, noticed the conflict at the hearing and asked for clarification, the claimant has not waived consideration

of the conflict. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *Powers v. Apfel*, 207 F.3d 431, 436-37 (7th Cir. 2000). However, if the conflict is not identified at the hearing, the claimant forfeits the objection unless the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman*, 546 F.3d at 463. Thus, when no one questions the VE's foundation or reasoning and the error is not obvious, an ALJ is entitled to accept the VE's conclusion. *Donahue,* 279 F.3d at 447.

Here, the ALJ failed to explicitly ask the VE if his testimony contradicted the DOT and no one identified any discrepancies at the hearing. Thus, the question is whether the VE's testimony obviously conflicted with the DOT.

The VE testified that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could perform the requirements of representative occupations such as hand assembler (DOT #721.684-022), security guard (DOT #372.667-034), semiconductor assembler (DOT #726.684-034), and surveillance system monitor (DOT #379.367-010). The ALJ relied on this testimony when he concluded at Step Five that Plaintiff could perform jobs that exist in significant numbers in the national economy.

Plaintiff now contends that the VE's testimony conflicts with the DOT as to the assembler job, the security guard job, and the surveillance systems monitor job. However, he does not challenge the VE's testimony regarding the semiconductor assembler job. Accordingly, the ALJ was entitled to rely on the VE's testimony related to that job. *Fast v. Barnhart*, 397 F.3d 468, 472 (7th Cir. 2005); *Donahue,* 279 F.3d at 446 (stating that when no one questions the VE's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion).

The VE testified that there were 10,680 semiconductor assembler jobs available in Illinois.  That is considered a "significant number" of jobs.  *See Liskowitz v. Astrue*,559 F.3d 736, 743 (7th Cir. 2009) ("it appears to be well-established that 1,000 jobs is a significant number" of jobs under Step Five).  Thus, even if the VE erred as to his testimony regarding the other jobs, that error was harmless in light of his testimony that Plaintiff could perform the semiconductor assembler job.  *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination).  As a result, the Court concludes that the ALJ satisfied the Step Five requirement that the ALJ must demonstrate that Plaintiff can do other work that exists in significant numbers in the national economy.

### IV.  Summary

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand (**#14**).

ENTER this 15th day of July, 2010.

                                                      s/ DAVID G. BERNTHAL  
                                                      U.S. MAGISTRATE JUDGE